**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT KATULA,** | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| v. | ) | |
| | ) | |
| **DELAWARE COUNTY BOARD OF** | ) | |
| **ELECTIONS,** | ) | **COMPLAINT** |
| | ) | |
| AND | ) | **JURY DEMAND ENDORSED HEREON** |
| | ) | |
| **PEG WATKINS,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robert Katula ("Katula"), for his Complaint against Defendants Delaware County Board of Elections (the "Board of Elections" or the "Board") and Peg Watkins ("Watkins") states as follows:

## PARTIES

1.      Katula is an adult individual residing in Delaware County, Ohio, and is a former employee of the Board of Elections.

2.      The Delaware County Board of Elections is a political subdivision of the state of Ohio.

3.      During all times relevant to this Complaint, Watkins was employed by the Board of Elections as a Board Member.   Katula brings this action against Watkins in her official capacity as well as her personal capacity.

## JURISDICTION AND VENUE

4.      As this case raises issues of federal law, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

5.      All allegations contained in this Complaint occurred in Delaware County, Ohio. Accordingly, Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(2).

## FACTUAL ALLEGATIONS

6.      The Members of the Board are appointed according to political party pursuant to R.C. 3501.

7.      Watkins is a Democratic Member of the Board.

8.      Katula was employed by the Board during all times relevant to this Complaint as an election specialist.

9.      Unlike the politically appointed Board Members, Katula's role was not based on political party affiliation.   Rather, Katula's position did not require him to belong to any particular political party. Nor did it require him to subscribe to any particular political ideology.

10.     To the contrary, Katula's role was administrative in nature, and required him to impartially assign poll workers when needed in advance of elections.

11.     Katula's position did not involve policymaking or use of any significant degree of discretion.  Rather, the position required him to complete assigned tasks as assigned by the Board of Elections.

12.     For example, the Board of Elections evaluated Katula on whether he "thoroughly follows directions."  Katula's final job evaluation indicated that he "[d]id everything assigned really well.  Poll workers filled assigned to their locations properly."

13.    Although Katula's position was apolitical in nature, Katula was a member of the Democratic Party.  In this role, Katula participated in Delaware County Democratic Party by volunteering at events and donating to the party.

14.    In addition to serving as a Board Member, Watkins also serves as the chair of the Delaware County Democratic party.

15.    Watkins knew Katula through his association with the Delaware County Democratic Party in addition to his work at the Board.

16.    Though both Watkins and Katula were members of the Delaware County Democratic Party, Watkins and Katula fell at different ranges of the political spectrum within the Party.

17.    Katula, for his part, is a "moderate" Democrat, falling towards the "right" side of the Democratic Party.

18.    Watkins, on the other hand, falls far to the "left" of Katula.

19.    In fact, Watkins falls so far to the "left" that she has openly expressed disapproval with any member of the Delaware County Democratic Party associating with members of the Republican party.

20.    Katula disagrees with Watkins' extreme approach. In fact, Katula is in a relationship with a Republican.

21.    When Watkins learned that Katula was dating a Republican, Watkins called Katula outside of working hours to interrogate him as to the nature of his relationship.   Katula was shocked by this call as it had nothing to do with work.  Nevertheless, Katula truthfully responded that he was in a relationship with a Republican.  Watkins openly expressed her disapproval with the relationship.

22.    Despite their understood political differences, Watkins and Katula continued to work together at the Board of Elections without incident.  Outside of work, Watkins continued to serve as

the chair of the Delaware County Democratic Party, and Katula continued to be active within the organization.

23.     On April 6, 2023, Katula made a post to his Facebook account stating "I am a middle of the road, right leaning person.  The important quality is to think outside the box.  Most so-called progressives are in a box so small that they should be called little idealogues."

24.     Katula's April 6th post was not directed at Watkins. Nor was it made in response to anything that happened at work.

25.     Instead, Katula made the post because he, like many Americans, has grown frustrated with the increasingly polarized nature of political debate in the United States.   Thus, Katula's April 6th post was intended to express his belief that the best way for members of the Democratic Party to solve problems is to "think outside the box" by finding ways to solve problems.  In so doing, Katula was expressing his belief as a private citizen regarding a matter of public concern.

26.     Katula made his post on Thursday evening, April 6th, outside of working hours.

27.     Katula had scheduled time off on Friday, April 7th, and returned to the office on Monday, April 10th at 8 AM for work.

28.     Upon his arrival, Katula found that he no longer had access to the office.   After unsuccessfully attempting to enter, another employee opened the door and escorted Katula to an office where Watkins was waiting for him.

29.     After Katula entered the office, Watkins stated that she did not approve of Katula's April 6th post because it "calls into question whether" Katula is a "true Democrat."  Watkins stated that Katula's position with the Board would be terminated as a result of the April 6th Post.

30.     Although Katula associates with the Delaware County Democratic Party in his personal capacity, being a "true Democrat" is not a job requirement for Katula.  Had an election

specialist who was not associated with the Delaware County Democratic Party made this comment, Watkins certainly would not have terminated such election specialist's employment.

31.     Thus, Watkins did not seek to retaliate against Katula in connection with his work. Instead, upon information and belief, Watkins was angered that Katula, in his capacity as an active participant in the Delaware County Democratic Party, did not conform his beliefs to match her extremist philosophy.

32.     Since Katula is not a Delaware County Democratic Party employee, and his involvement is limited to events that occur outside of working hours in Katula's capacity as a private citizen, Watkins had no meaningful way of retaliating against Katula in that capacity.

33.     Thus, upon information and belief, Watkins resorted to misusing her position as a Member of the Board by terminating Katula from his apolitical position in retaliation for his failure to conform his behavior outside of work.

## COUNT I
### (First Amendment Retaliation in Violation of 42 U.S.C. § 1983)

34.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully rewritten herein.

35.     Katula has a civil, statutory, and constitutional right not to be retaliated against for engaging in activity protected by the First Amendment of the United States Constitution.

36.     Katula engaged in conduct protected by the First Amendment of the United States Constitution by associating with a Republican outside of work hours.

37.     Katula also engaged in conduct protected by the First Amendment of the United States Constitution by speaking on a matter of public concern.

38.     In response to Katula's protected activity, Defendants subjected Katula to conduct that would deter a person of ordinary firmness from engaging in protected activity by terminating his employment.

39.     There is a causal connection between Katula's engagement in protected activity and Defendant's termination of Katula's employment.

40.     As a direct and proximate cause of Defendant's retaliation, Katula has suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## DEMAND FOR RELIEF

WHEREFORE, Katula requests that this Court enter judgment against Defendant and that this Court grant the following:

1.     For an award of compensatory and monetary damages to compensate Katula for lost earning and benefits, noneconomic damages, punitive damages, and other consequential damages in an amount to be proven at trial;

2.     Awarding Plaintiff liquidated damages;

3.     Awarding Plaintiff his reasonable costs and fees; and

4.     Awarding Plaintiff such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Christopher J. Lalak (0090079)
**LALAK LLC**
1991 Crocker Road
Suite 600
Westlake, OH 44145
Telephone: 440-892-3380
Email:      clalak@employmentlawohio.com

*Counsel for Plaintiff Robert Katula*


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

Christopher J. Lalak (0090079)

*Counsel for Plaintiff Robert Katula*