# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT KATULA,** | : | |
| | : | Case No.: 2:23-cv-02199 |
| Plaintiff, | : | |
| | : | Judge Edmund A. Sargus |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| **DELAWARE COUNTY BOARD OF ELECTIONS, et al.,** | : | |
| | : | |
| Defendants. | : | |

## MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS DELAWARE COUNTY BOARD OF ELECTIONS AND PEG WATKINS

Defendants Peg Watkins, Member of the Delaware County Board of Elections, in her individual and official capacities ("Watkins") and the Delaware County Board of Elections ("the Board," and collectively "Defendants") hereby move, by and through counsel, for judgment on the pleadings on Plaintiff Robert Katula's claims pursuant to Federal Rule of Civil Procedure 12(c). Defendants request that all claims by Plaintiff be dismissed with prejudice on the following grounds:

I. Plaintiff cannot maintain a claim under the First Amendment because his position was part of a group of positions filled by balancing out political party representation; and

II. Plaintiff's claim that his role as an Election Specialist was not based on political party affiliation is conclusory and, in any event, it is undisputed that his position was filled by the Board to balance party affiliation.

A Memorandum in Support which sets forth these reasons is more detail is attached hereto.

/s/ Jeffrey A. Stankunas
Jeffrey A. Stankunas   (0072438)
*Trial Counsel*
jstankunas@isaacwiles.com
Gareth A. Whaley (0102156)
gwhaley@isaacwiles.com
**ISAAC WILES & BURKHOLDER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
Tel: (614) 221-2121 | Fax: (614) 365-9516
*Attorneys for Defendants*

## MEMORANDUM IN SUPPORT

**I.     STATEMENT OF FACTS**

**A.     Allegations in the Complaint**

Plaintiff alleges that he was employed by the Board as an election specialist. (Complaint, Doc 1, PageID 2, ¶8). He alleges that his role "was not based on political party affiliation," "did not require him to belong to any particular political party," did not "require him to subscribe to any particular political ideology," that it "was administrative in nature," that it "did not involve policymaking," and that it "was apolitical in nature." (*Id.*, PageID ## 2-3, ¶¶9, 10, 11, and 13). In terms of actual facts alleged about his role, he states that he was required to "impartially assign poll workers when needed in advance of elections" and that he was evaluated "on whether he 'thoroughly follows directions.'" (*Id.*, PageID #2, ¶¶ 12).

As alleged in the Complaint, both Plaintiff and Watkins are members of the Delaware Democratic Party – Plaintiff allegedly volunteered at events and donated to the party, and Watkins served as chair. (*Id.*, PageID #3, ¶¶13-14). Plaintiff is allegedly closer to the political "center" than Watkins. (*Id.*, ¶¶17-18), who is allegedly "far to the 'left,'" with an "extreme approach" to politics. (*Id.*).

2

On April 6, 2023, Plaintiff claims he made a Facebook post stating "I am a middle of the road, right leaning person. The important quality is to think outside the box. Most so-called progressives are in a box so small that they should be called little idalogues [sic]." (*Id.*, PageID #4, ¶23). This statement, in which Plaintiff referred to himself as a "right leaning person," caused Watkins to terminate his employment. (*Id.*, ¶29). She allegedly stated that the post "'calls into question whether' Plaintiff is a 'true Democrat,'" and stated explicitly that he would be terminated because of the post. (*Id.*).

In his Complaint, Plaintiff alleges one count of First Amendment Retaliation in violation of 42 U.S.C. § 1983.  (Id., PageID #5).

B.     **Additional Exhibits**

Courts may consider relevant matters of public record in a 12(c) motion without converting it into a motion for summary judgment. *McLaughlin v. CNX Gas Co., LLC*, 639 F. App'x 296, 298-99, 2016 U.S. App. LEXIS 1138 (6th Cir. 2016) (citing *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). Two public records are relevant to this motion and are attached to Defendants' Answer. The first is the Record of Proceedings of the February 4, 2020 Regular Board Meeting of the Delaware County Board of Elections, which states on page 3 that "Member Watkins made a motion to hire two new *Democratic workers*, to serve as full time staff, Indushree Rajan and Robert Katula." (emphasis added). (Defendants' Answer, Ex. A, Doc. 6-1, PageID # 31). The second is the record from a meeting of the Board on September 2, 2015, which states "Mr. Burnsworth moved and Mr. Stevens seconded a motion to hire Alice Solove to the open position of permanent part time *Republican* Election Support Specialist" (emphasis added) (Defendants' Answer, Ex. B, Doc. 6-2, PageID # 34). These records demonstrate that the Delaware

3

County Board of Elections hired Plaintiff, and his Republican counterparts, based on their partisan affiliation. Plaintiff was explicitly hired as a "Democratic worker."

II.     **LAW AND ARGUMENT**

    A.     **Plaintiff cannot maintain a claim under the First Amendment because his position was part of a group of positions filled by balancing out political party representation.**

As set forth above, Plaintiff's sole claim is that his termination was in violation of the First Amendment. But the United Sates Court of Appeals for the Sixth Circuit has been clear that a government employee has no recourse under the First Amendment for a termination if they are in a "policymaking" position and they are terminated for their political affiliation. *Schwamberger v. Marion Cty. Bd. of Elections*, 988 F.3d 851, 856-57 (6th Cir. 2021) (citing *Elrod v. Burns*, 427 U.S. 347, 367, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)). The ultimate inquiry is "'whether the hiring authority can demonstrate that party affiliation is an appropriate requirement' for the public office in question." *Id.* at 857 (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980)). The Sixth Circuit set forth four categories of government employee which can be considered "policymaking" in *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996). Plaintiff's position falls under the fourth category of policymaking employee – "positions that are part of a group of positions filled by balancing out political party representation . . ." *Id.*

The Sixth Circuit has recently affirmed the dismissal of a case with virtually identical allegations to those made here. In *Schwamberger v. Marion Cty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021), a former deputy director of the Marion County Board of Elections filed a First Amendment retaliation claim after she was fired for giving a speech criticizing her employer. The Sixth Circuit found that the plaintiff fell under the fourth *McCloud* category of policymaking

4

employee because she was required, by statute, to be a different political party from the director of the Board of Elections. *Id.* at 857 (granting 12(b)(6) motion to dismiss).

Here, the Resolution passed by the Board makes clear that the Plaintiff was hired to represent Democrats. And the Resolution previously passed by the Board makes clear that Plaintiff's position was balanced between Republicans and Democrats. While the Ohio Revised Code does not specifically require a balancing of political party representation for positions such as Plaintiff's, the fourth exception under *McCloud* is simply that the position is a part of a group of positions filled by balancing out political party representation.

The Ohio Revised Code, however, does make clear that the balance of political party representation for employees of a county board of elections is permissible, if not expected and the only practical manner of complying with other requirements of the Ohio Revised Code. It should first be noted that in setting up county boards of elections, R.C. § 3501.06(A) stipulates that "[t]here shall be in each county of the state a board of elections consisting of four qualified electors of the county, who shall be appointed by the secretary of state," and who shall serve as the secretary's representatives. R.C. § 3501.06(B) provides that each county board's partisan makeup must be balanced, evenly split between "board members ... from the political party which cast the highest number of votes for the office of governor at the most recent regular state election" and the party that placed second. R.C. §§ 3501.06(B)(1), (2). As stated by the Sixth Circuit in *Schwamberger*: "[p]ut simply, each county board must have four members divided equally between the two major parties." *Schwamberger*, at 854. And as required by R.C. § 3501.091, "the director and deputy director shall be of opposite political parties . . .." As to county board of election employees other than the director and deputy director, R.C. § 3501.14 provides that the board may appoint "other employees, prescribe their duties, and by a vote of not less than three of

5

its members, fix their compensation." Such employees may be summarily removed by a majority vote of its membership. (*Id.*). Thus, all employees of a county board of elections are unclassified civil servants, and therefore, at-will employees. See *Schwamberger*, at 858 (citing R.C. § 124.11(A)(2)("The unclassified service shall compromise the following positions . . . [a]ll elections officers as defined in section 3501.01 of the Revised Code").

Regarding the requirements of the Ohio Revised Code that result in the expectation that county board of elections employees be appointed to balance out party representation, R.C. § 3509.05(C)(3)(d) states that "[o]nly a bipartisan team of election officials may open a secure receptacle or handle its contents." Similarly, R.C. § 3505.31 states that election materials must be delivered to the county board of elections by an employee "who is a member of a different political party than the voting location manager[.]" R.C. § 3505.331 requires ballot count audits to be conducted by "bipartisan teams of election officials[.]" Per R.C. 3506.14(C), voting machines must be tested by "bipartisan teams of election officials." R.C. 3505.24(B) requires that a voter who is otherwise unable to mark their ballot must be aided by "two election officials of different political parties." Notably, as an employee of a county board of elections, Plaintiff was one of the "election officers" to whom these statutes refer – R.C. § 3501.01(U), which states that "'Election officer' or 'election official'" explicitly includes "[e]mployees of a board of elections."

Here, Plaintiff was appointed to balance out party representation, which is the expectation of the Ohio Revised Code. Therefore, and as a matter of law, Plaintiff cannot sustain a claim based upon the First Amendment.

6

**B.      Plaintiff's claim that his role as an Election Specialist was not based on political party affiliation is conclusory and, in any event, it is undisputed that his position was filled by the Board to balance party affiliation.**

In his Complaint, Plaintiff alleges in conclusory fashion that his role "was not based on political party affiliation," "was administrative in nature," "did not involve policymaking or use of any significant degree of discretion," and that it "was apolitical in nature." (Complaint, Doc. 1, PageID ## 2-3, ¶¶9, 10, 11, and 13). On their own, these claims amount to little more than "'naked assertion[s]' devoid of 'further factual enhancement'" of the kind which cannot independently survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In any event, however, the applicable issue under *McCloud* is whether Plaintiff's position was "part of a group of positions *filled by balancing out political party representation*." On this issue, Plaintiff's Complaint is silent.

The official minutes of the Board meeting in which Plaintiff was hired, in addition to making clear that he was hired as a Democrat, further make clear that Plaintiff was not in attendance at the Board meeting. (Defendants' Answer, Ex. A, Doc. 6-1, PageID # 30). As the Sixth Circuit held in *McLaughlin v. CNX Gas Co., LLC*, 639 F.App'x 296, 298-99, 2016 U.S. App. LEXIS 1138 (6th Cir. 2016), matters of public record may properly be considered in deciding a motion for judgment on the pleadings. *See also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment."). While it is true that a court may not take judicial notice of disputed *facts* stated in public records on a motion for judgment on the pleadings, *see, e.g., Embassy Realty Invs., LLC v. City of Cleveland*, 877 F.Supp.2d 564, 571 (N.D. Ohio 2012), that is not the purpose for which the Board's minutes are included in this Motion. Although the minutes could not be properly used, for instance, to show

7

at the pleadings stage that Plaintiff *is in fact a Democrat* merely because the minutes call him a "Democrat worker," they can permissibly be used to show that he was *hired as a Democrat*, because Exhibit A is the actual document through which the Board hired Plaintiff. (Doc. 6-1, PageID # 31). The legal effect of these proceedings was to hire Plaintiff as a Democrat, which the Ohio Revised Code makes clear can only be done by "a vote of not less than three of its members." R.C. § 3501.14. Exhibit B, the minutes in which the Board hired one of Plaintiff's Republican counterparts, is usable in a 12(c) motion for the same reason – it shows that the Board hired employees in Plaintiff's position to balance out political party representation. (Defendants' Answer, Ex. B, Doc. 6-2, PageID #34).

Plaintiff's Complaint does not address the issue of the Board having filled his position to balance out party representation. It is undisputed from the official Board minutes that this is in fact exactly what the Board did. Therefore, it is also undisputed that, as a matter of law, Plaintiff cannot maintain a claim under the First Amendment.

### III.    CONCLUSION

For the reasons stated above, Defendants request this Court to grant them judgment on the pleadings as to Plaintiff's First Amendment claim, and to dismiss his Complaint.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Jeffrey A. Stankunas
Jeffrey A. Stankunas   (0072438)
*Trial Counsel*
jstankunas@isaacwiles.com
Gareth A. Whaley (0102156)
gwhaley@isaacwiles.com
**ISAAC WILES & BURKHOLDER , LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
T: (614) 221-2121 | F: (614) 365-9516
*Attorneys for Defendants*

</div>

8

## CERTIFICATE OF SERVICE

      I hereby certify that on August 16, 2023, a copy of the foregoing Motion for Judgment on the Pleadings was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          */s/ Jeffrey A. Stankunas*
                                          Jeffrey A. Stankunas (0072438)

4872-4941-3237.1